# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STEVEN W. HYDE and SANDRA D. BROOKE, husband and wife, | ) ) ) ) ) | No. 70830-9-I |
| Respondents, | ) ) | |
| v. | ) ) ) | |
| UNIVERSITY OF WASHINGTON MEDICAL CENTER, STATE OF WASHINGTON, and THE ASSOCIATION OF UNIVERSITY PHYSICIANS, d/b/a UW PHYSICIANS, | ) ) ) ) ) ) | PUBLISHED OPINION |
| Petitioners. | ) ) ) | FILED: April 13, 2015 |

VERELLEN, A.C.J. — A nonprofit corporation that is functionally an arm of the state

is subject to the tort claim filing requirements of RCW 4.92.100 and .110. The

Association of University Physicians, d/b/a UW Physicians (UWP), a nonprofit

corporation, provides physician services by University of Washington (UW) medical

school faculty at hospitals operated by the university. UWP was created to serve the

purposes of, and is controlled by, the UW School of Medicine, a state agency. Because

UWP functions as an arm of the state and exposes state funds to liability, it constitutes

a state entity for purposes of tort claim notice requirements. Accordingly, we reverse

the trial court's denial of summary judgment.

## FACTS

On August 27, 2012, Steven Hyde and his wife Sandra Brooke brought a medical malpractice suit alleging that Dr. Virany Hillard was negligent in providing medical care to Hyde at the UW Medical Center in August 2009. Dr. Hillard, a neurosurgeon, was a member of UWP and was on the UW School of Medicine faculty at the time. UWP provides physician services at the UW Medical Center. All its members are physicians who are faculty members at the UW School of Medicine with no independent private practice. The complaint did not name Dr. Hillard as a defendant, but named the State of Washington, the UW Medical Center, and UWP.

The defendants moved for summary judgment based on Hyde's failure to submit a notice of tort claim before commencing the action as required by RCW 4.92.100 and .110 for tort claims against a state entity. The trial court granted the motion as to the State of Washington and the UW Medical Center, but denied it as to UWP. The court concluded that UWP is not a municipal corporation, but is a nonprofit corporation dealing with the public at large and therefore, RCW 4.92.110 does not apply. This court granted UWP's motion for discretionary review.

## DISCUSSION

UWP contends that it is a state entity subject to the tort claim filing requirements of RCW 4.92.100 and .110. We agree.

When reviewing an appeal from summary judgment, we engage in the same inquiry as the trial court to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law.[1] Here, the

---

[1] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

issue is solely whether, as a matter of law, UWP constitutes a state entity subject to the tort claim filing requirements. We hold that it does.

By enacting chapter 4.92 RCW, the legislature abrogated state sovereign immunity and established procedures for suing the state. Among these are the filing requirements provided in RCW 4.92.100 and .110, which preclude tort claims against the state unless the plaintiff first files a tort claim with the state's risk management office at least 60 days before commencing the action:

> All claims against the state, or against the state's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct, must be presented to the office of risk management.[2]

> No action subject to the claim filing requirements of RCW 4.92.100 shall be commenced against the state, or against any officer, employee, or volunteer, acting in such capacity, for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim is presented to the office of risk management.[3]

Dismissal is the proper remedy for failure to comply with these tort claim filing requirements.[4]

As both parties acknowledge, our courts have not addressed the precise question of whether an entity such as UWP, which provides physician services in hospitals owned and operated by the university and whose members are UW faculty members, constitutes a state entity for purposes of triggering the tort claim filing requirements of RCW 4.92.100 and .110. But there is case law consistent with recognizing UWP as a functional arm of the state.

---

[2] RCW 4.92.100.

[3] RCW 4.92.110.

[4] Oda v. State, 111 Wn. App. 79, 87, 44 P.3d 8 (2002).

Generally, an entity operated and managed by a state agency for a state purpose is considered an arm of the state. For example, in Hontz v. State, the court recognized that, for purposes of immunity from 42 U.S.C. § 1983 civil rights lawsuits, Harborview hospital "is an arm of the State" because it is operated and managed by UW, a state agency.[5] The court concluded, "It is clear that, in the context of this case, a § 1983 suit against Harborview is in legal effect a suit against the State and cannot, therefore, be maintained."[6]

Specifically, tort claim notice requirements for state entities extend to those who function on behalf of the state, especially if that activity exposes state funds to liability. In Hardesty v. Stenchever, this court addressed the applicability of the tort claim filing statutes to a doctor employed by the UW Medical Center.[7] There, a patient brought a medical negligence claim against the state, UW Medical Center, and a doctor employed by the UW Medical Center. The trial court dismissed the claims against the state and the UW Medical Center because the plaintiff failed to comply with the tort claim filing requirements. But the trial court allowed the claim to go forward against the doctor, finding that he was acting in his individual capacity when he made decisions about the patient's medical care.[8] This court reversed, concluding that the doctor's actions were performed within the scope of his official duties at UW.[9] As the court explained:

---

[5] 105 Wn.2d 302, 310, 714 P.2d 1176 (1986).

[6] Id.

[7] 82 Wn. App. 253, 917 P.2d 577 (1996).

[8] Id. at 261.

[9] Id.

As a physician at the UW, treating patients is his "official" duty. He has no others. Under RCW 4.92, the attorney general is required to defend him and satisfy any judgment against him. The suit, therefore, exposes state funds to liability, making this precisely the type of case to which RCW 4.92 applies.[10]

The character and function of UWP are evidenced by its articles of incorporation, bylaws, and operating agreement with the university. UWP is a nonprofit corporation created under chapter 24.03 RCW "for the benefit of the University of Washington School of Medicine exclusively for charitable, educational and scientific purposes, and to aid in performing certain functions of and to carry out certain purposes of the University of Washington School of Medicine."[11] Its principal and income are devoted exclusively to these purposes. UWP is managed and directed by a board of trustees, which includes the chairs of each department of the UW medical school, plus 12 at-large trustees who are voting members of UWP elected by their colleagues and three community members who are appointed by the dean of the medical school. Upon dissolution, UWP's remaining assets will transfer to the university.

UWP provides physician services only at hospitals owned or managed by UW and other practice sites approved by the medical school dean. The physicians who provide these services must be faculty members of the UW School of Medicine, have no independent private medical practice, and, unless otherwise approved by the medical school dean, must be licensed to practice medicine in Washington. All records of care provided by UWP members at UW facilities are the property of UW.

---

[10] Id.

[11] Clerk's Papers (CP) at 38.

UWP is responsible for billing for the services rendered by its members and retains payments received as its property. Members are compensated by UWP in addition to their salary as UW faculty employees.[12] Member compensation agreements with UWP are subject to the dean's approval. UWP retains all funds in excess of the annual operating expenses "for the benefit of the School of Medicine, as an Academic Support Fund to be used through the University by the School of Medicine for the educational, research and other institutional needs of the School of Medicine."[13]

As provided in the operating agreement, UWP members are deemed agents of UW for professional liability purposes:

> Members of the University's faculty, house staff and students involved in providing health care in University facilities shall be deemed employees and agents of the University for professional liability coverage purposes and self-insurance purposes by the University when providing care to patients in facilities owned or managed by or affiliated with the University as a part of an approved University research or other health care program.[14]

UWP contends that, as with Harborview, which is only managed and operated by UW, UWP is also "an arm of the state." UWP's analogy to Harborview is persuasive.[15]

While Hontz was in the context of state immunity from 42 U.S.C. § 1983 claims, the question there was whether the suit against Harborview was "in legal effect a suit against the State," the same issue presented here.[16] The court concluded that it was a

---

[12] See CP at 60 ("The Association shall have no claim upon any member's University salary.").

[13] CP at 70.

[14] CP at 75.

[15] UWP also relies on Kleyer v. Harborview Medical Center, 76 Wn. App. 542, 887 P.2d 468 (1995). Although Kleyer did not analyze whether Harborview was a state entity, it did apply the claim filing requirements to Harborview. Id. at 543.

[16] 105 Wn.2d at 310.

suit against the state because Harborview was operated and managed by UW, a state agency.[17] The court also noted that Harborview's employees are state employees and that claims against UW's operation at Harborview are paid from a fund held by the state treasurer.[18]

Similarly, UWP is operated and managed by UW. The operating agreement recites that UWP "has been organized for the purposes of assisting the University School of Medicine in carrying out its charitable, educational, and scientific purposes."[19] Its bylaws recognize UWP is ultimately accountable to the UW School of Medicine: "The functioning of this Association is subject to the policies of the School of Medicine with respect to the practice of medicine in connection with the faculty duties of the members."[20] The board of trustees that manages and oversees UWP includes the department heads of the medical school and a minority of community members appointed by the medical school dean. UWP's bylaws state that "[t]he Executive Committee shall be directly accountable to the Board and through it to the Dean."[21]

Additionally, as UW faculty members, all UWP members are also UW employees. Compensation through UWP allows members to provide professional services in conjunction with their role as UW faculty and to be compensated at levels necessary to attract quality physicians, as authorized by the legislature under the single

---

[17] Id.

[18] Id.

[19] CP at 68.

[20] CP at 62.

[21] CP at 56.

paycheck rule.[22] The terms of UWP members' compensation is also subject to the UW medical school dean's approval. Finally, UWP members are deemed agents of UW for professional liability purposes.

Hardesty further supports UWP's position. While Hardesty addressed whether the tort claim filing requirements applied to an individual doctor providing care at UW Medical Center, the reasoning extends to UWP, which fills substantially the same role. In Hardesty, the court held that because the doctor was treating patients at the UW Medical Center in his official duties as a physician at the university, the suit "exposes state funds to liability, making this precisely the type of case to which RCW 4.92 applies."[23] Similarly, UWP acts in its official capacity as the provider of physicians for the UW Medical Center, all of whom are UW faculty employees, and exposes UW funds to liability. As noted above, UW bears financial responsibility for the official acts of UWP physicians as agents of the university.

Further, the use of a separate nonprofit corporation does not preclude the entity from being considered as an arm of the state. UWP contends that it is like UW's student association, Associated Students of the University of Washington (ASUW), which was recognized as an agency of the university in Good v. Associated Students of the University of Washington.[24] There, the court rejected the plaintiffs' argument that ASUW, created as a separate nonprofit corporation, was "not an arm and agency of the

---

[22] See RCW 42.52.110 (preventing receipt of additional compensation for performance of official duties except by the state, or "an agency or instrumentality of a governmental entity, or a nonprofit corporation organized for the benefit and support of the state employee's agency or other state agencies pursuant to an agreement with the state employee's agency").

[23] 82 Wn. App. at 261.

[24] 86 Wn.2d 94, 542 P.2d 762 (1975).

university, but an independent entity."[25] The issue was whether UW had the authority to allocate funds comprised of mandatory student fees to the ASUW, an organization that was created as a separate nonprofit corporation.[26] The court held that UW did have the authority to do so, recognizing that it was within UW's power "to provide student activities and services through a separate nonprofit corporation, so long as that entity is in essence an agency of the university and [is] subject to ultimate control by the board [of regents]."[27] Citing statutes granting broad authority to UW and ASUW bylaws and board of regent policy statements recognizing that authority, the court concluded that ASUW was an agency and arm of UW and subject to the board's ultimate control.[28]

The trial court here distinguished Good, concluding that UWP "is not a municipal corporation. It is a nonprofit corporation dealing with the public at large, unlike the [ASUW] in Good."[29] But Good did not analyze ASUW as a municipal corporation. It simply recognized that ASUW was created as a nonprofit corporation and "maintains a corporate identity separate from (though intimately connected with) the university."[30] Good concluded that, although created as a separate corporation, ASUW is still an arm and agency of UW because it is subject to ultimate control by the board of regents.[31] As described above, this is analogous to the function of UWP.

---

[25] Id. at 99.

[26] Id. at 96-97.

[27] Id. at 97.

[28] Id. at 97-98.

[29] CP at 83.

[30] 86 Wn.2d at 97.

[31] Id. at 97-98.

Woods v. Bailet further supports applying the tort claim filing requirements to UWP.[32] Woods held that the claims filing statute for suits against local governments applied to PacMed, a public corporation created by the city, even though the city provided no funds to PacMed. The court concluded that PacMed, a public corporation created by the city to provide free and low cost health care, fell within the definition of "local government entity," to which the local government claims filing statute applied.[33] Noting that the legislature intended to cover any corporation created by a local government to provide a public purpose, the court concluded that PacMed was created for such a purpose.[34] UWP was not created by a municipality under the same statute at issue in PacMed, but UWP's purpose and function are nonetheless similar to that of PacMed's. By analogy, UWP is a state entity to which the tort claim filing statutes apply.

Hyde argues, without citation to authority, that applying the tort claim filing statutes to a corporation like UWP would be unconstitutional under the privileges and immunities clause, article I, section 12 of the state constitution.[35] Hyde contends that because UWP is neither a municipal corporation nor a public corporation, "if it were to receive the benefit of the claim filing requirement of Chapter 4.92 RCW, it would be a recipient of a privilege or immunity which does not exist for other corporations."[36] This

---

[32] 116 Wn. App. 658, 67 P.3d 511 (2003).

[33] Id. at 665.

[34] Id.

[35] "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not belong equally to all citizens, or corporations." WASH. CONST. art. I, § 12.

[36] Br. of Resp't at 4.

contention lacks legal and logical basis. As UWP points out, statutes requiring presuit notice of claims against the state are constitutionally authorized by article II, section 26 of the state constitution,[37] and have been upheld against constitutional challenge.[38] Thus, so long as the entity at issue constitutes an instrumentality of the state for purposes of applying the statute, as is the case with UWP, there is no violation of the privileges and immunities clause.

Hyde also contends that the statute refers only to the state or persons, i.e., "officer, employee or volunteer," not corporations such as UWP.[39] But again, this ignores the essence of UWP's argument and authority that it is an instrumentality or "arm" of the state, which is necessarily encompassed by the statute's reference to "the state."

## CONCLUSION

UWP was created by a state entity, UW, to provide public health care on behalf of that entity and to support the public university. UWP was created "for the benefit of" the UW medical school "exclusively for charitable, educational and scientific purposes" and "to aid in performing certain functions of and to carry out certain purposes of" the UW medical school.[40] UWP is also required "to devote its income to the support of the University" and must retain all of its funds in excess of its annual operating expenses

---

[37] "The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." WASH. CONST. art. II, § 26.

[38] See McDevitt v. Harborview Med. Ctr., 179 Wn.2d 59, 68-69, 316 P.3d 469 (2013) (finding 90-day presuit notice requirement of former RCW 7.70.100(1) (2006) did not violate equal protection).

[39] Br. of Resp't at 4.

[40] CP at 38.

11

"for the benefit of the School of Medicine, as an Academic Support Fund to be used throughout the University by the School of Medicine for the education, research and other institutional needs of the School of Medicine."[41] Undisputed facts establish that UWP is operated and managed by the UW School of Medicine, an entity of the state. The activities of UWP subject state funds to liability. Thus, the tort claim filing requirements of RCW 4.92.100 and .110 apply to UWP.[42]

Accordingly, we reverse the order denying summary judgment and remand for an order dismissing Hyde's claims against UWP.

WE CONCUR:

_____

_____

_____

---

[41] CP at 69-70.

[42] UWP's reliance on McDevitt, a medical negligence suit brought against the State, Harborview, and UWP, is not persuasive. McDevitt addressed only the constitutionality of the 90-day presuit notice requirement of former RCW 7.70.100(1) as applied to lawsuits against the State. It did not directly or indirectly implicate whether UWP was subject to the tort claim filing requirements. McDevitt, 179 Wn.2d at 68-69.